IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
MAY 1 3 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 5:04CR00025 |
| ) | |
| v.           ) | |
| ) | REPORT AND RECOMMENDATION |
| NATASHA MARIE MARKLE, ) | |
| ) | |
| Defendant, ) | By:  B. WAUGH CRIGLER |
| ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Indictment charging defendant in Count One with knowingly conspiring to distribute, and to possess with intent to distribute, 50 grams or more, of a mixture or substance containing a detectable amount of cocaine base, also called "crack," a Schedule II narcotic controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 846. With respect to Count One, the Grand Jury also made a special finding, pursuant to United States Sentencing Guidelines § 1B1.3(a)(1)(B), that it was reasonably foreseeable to the defendant that members of this jointly undertaken criminal conspiracy distributed or possessed with intent to distribute more than 1.5 kilograms of mixtures and substances containing detectable amounts of cocaine base, also called "crack," in and between December 2002 and December 2004.  In addition, the Grand Jury made a special finding, pursuant to USSG § 2D1.1(b)(1), that the defendant possessed firearms, aided and abetted another defendant in possessing firearms, or was otherwise responsible for the firearms possession by another defendant as a reasonably foreseeable consequence of the conspiracy.  On May

3, 2005, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Count One of the Indictment pursuant to a plea agreement between defendant and the government.

At this hearing the defendant was placed under oath and testified that her full legal name is Natasha Marie Markle, that she was born on October 1, 1975, and that she received her GED. The defendant stated that she can read, write, and understand the English language. The defendant stated that she was fully aware of the nature of the charges against her and the consequence of pleading guilty to those charges. The defendant further testified that she was not under the influence of alcohol, medicine, or any drug. Defendant stated that she was subject to no other physical or mental condition that impaired her ability to understand the nature of the proceedings being held. Defendant's counsel stated that she had no reservations as to the defendant's competency to enter a plea of guilty to these offenses.

The defendant testified that she had received a copy of the Indictment pending against her and that she had fully discussed the charges therein, and her case in general, with her counsel. She also testified that she had read the plea agreement in its entirety and she had discussed the plea agreement with her counsel before signing the agreement. She stated that she understood the terms of the agreement and that the document presented to the court set forth her agreement with the government in its entirety. The defendant specifically testified that she understood that under the terms of the agreement she was waiving any right to appeal or to collaterally attack her conviction or sentence and that she was waiving her right to have a jury determine beyond a reasonable doubt the facts alleged in Count One, including any facts related to sentencing.

The defendant stated that she was pleading guilty of her own free will because she was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises other than

those contained in her agreement with the government, or made any assurances or threats to her in an effort to induce her plea. The defendant testified that she understood that the offenses with which she is charged are felonies and that, if her plea is accepted, she will be adjudged guilty of such offenses. Moreover, the defendant testified that she understood that she will be required to pay a mandatory assessment of $100, and that, at the discretion of the court, she may also be denied federal benefits, as that term is defined in 21 U.S.C. § 862, for a period of years or indefinitely, as set forth in the plea agreement. The defendant stated that she consented to the administrative forfeiture, official use and/or destruction of any illegal firearms or illegal contraband seized by any law enforcement agency from her possession or from her direct or indirect control. The defendant further stated that she understood that she must submit to the government a complete and truthful financial statement revealing all her assets and liabilities on a form provided by the government within 30 days of the date of the plea agreement. The defendant stated that she was waiving her right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that she was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of her case.

The defendant was informed that the maximum possible penalty provided by law for the offenses with which she is charged is, in the case of Count One, life imprisonment and a $4 million fine, together with supervised release. The defendant also was informed that the statutory minimum sentence for Count One is ten years in prison. The defendant was informed under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the

United States Supreme Court's decision in *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that she and her counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that she understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have an opportunity to challenge the reported facts and the application of the guidelines. She stated that she understood that the eventual sentence imposed may be different from any estimate her attorney has given her and that the court has the authority to issue a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty.

The defendant testified that she understood that, contingent upon her acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of her duties under the plea agreement, the government will recommend an additional two-level (2) reduction under USSG § 3E1.1(a) for acceptance of responsibility and, finally, a one-level (1) reduction pursuant to USSG § 3E1.1(b) if her offense level is 16 or greater. The defendant stated that she understood that the government is under no obligation to file a motion for substantial assistance, but that the government's exercise of discretion in this regard depends upon her efforts to provide such assistance. The defendant further stated that she understood that the government would recommend that her sentence of incarceration be fixed between the low end and middle of the applicable sentencing guideline range, but that the court would not be bound by the government's recommendation. The defendant stated that she knew that parole had been abolished. She acknowledged that if sentenced to incarceration she will

not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that she understood that she had the right to a trial by a jury, in addition to the following rights, which would be waived or given up if her guilty plea is accepted:

1. The right to plead not guilty to any offense charged against her;
2. The right at trial to be presumed innocent and to force the government to prove her guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in her own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
6. The right to decline to testify unless she voluntarily elected to do so in her own defense;
7. The right to a unanimous guilty verdict;
8. The right to appeal a guilty verdict.

The defendant also testified that she understood that if she is adjudged guilty of these charges, she may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that she was fully satisfied with the advice and representation given to her in this case by her counsel. The defendant also testified that she understood the possible consequences of her plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept her plea of guilty to Count One of the Indictment.

## THE GOVERNMENT'S EVIDENCE

The defendant waived her right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

The defendant, Natasha Markle, was a cocaine supplier from Winchester, Virginia. The cocaine that she supplied was transformed into crack cocaine. The following information pertaining to Markle's distribution of cocaine was obtained via interviews and proffers.

Derek Lucie stated that Natasha Markle was a cocaine supplier whom he had met through Waverly Jordan. Lucie stated that, from May 2003 until June 2003, he would accompany Jordan to pick up his cocaine from Markle. Jordan was buying ounce quantities three times a week from Markle. Jordan would cook up the cocaine into crack cocaine selling it to his customers and using. After Jordan and Markle had a falling out, Lucie began to deal with Markle directly from June 2003 until August 2003. Lucie would obtain ounce quantities three times a week until he met Markle's supplier. After that, and starting in August 2003, he dealt directly with Markle's supplier.

Michael Cooper stated that on several occasions he was directed by Waverly Jordan to accompany Markle to pick-up cocaine for him from the Mexicans. Cooper stated that he would drive Markle to meet the Mexicans, and, upon meeting them, Markle would obtain cocaine which was given to Jordan and Cooper. Cooper stated that Markle informed him that the Mexicans would not get out of bed for anything under a half-ounce.

Chance Whittington stated that Markle supplied Jordan with three ounces of cocaine on eight to ten occasions from August 2003 until September 2003.

Jennifer McClellan stated that when she was dating Waverly Jordan (from June 2003 until July 2003) she accompanied Jordan to Markle's residence where Jordan obtained cocaine from Markle. Markle made the phone calls and McClellan would accompany Markle to go pick up the cocaine from some Mexican males. Upon picking up the cocaine, Markle would then give Jordan the amount that he needed. McClellan stated that Jordan got a total of approximately five ounces from

-6-

Markle when she was present, and Jordan informed McClellan that he had been dealing with Markle for years.

Timmy Jones informed that Markle would pick up cocaine for Christine Danos on several occasions, and Edgar Hewitt would pick-up cocaine and crack cocaine from Markle when Danos was out. Jones stated that Markle would sell crack cocaine to Hewitt who would obtain anywhere from 3.5 grams to two ounces. Jones stated that Markle would cook up her own crack cocaine.

Bryan Young stated that Markle was Waverly Jordan's cocaine supplier and he had accompanied Jordan on approximately two occasions. On each occasion, Markle met with unknown Mexicans to acquire cocaine.

Christine Danos stated that Markle had provided her with cocaine and crack cocaine when they would party together.

Jennifer Kenney stated that she has gotten high with Markle on occasion, and that they would cook cocaine into crack and smoke it. Kenney stated that she was aware that Markle provided cocaine to Edgar Hewitt and Timmy Jones.

Waverly Jordan stated that he bought a total of approximately thirteen ounces of cocaine from Markle in June 2003.

**PROPOSED FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;
2. The defendant is aware of the nature of the charges and the consequences of her plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that this court accept the defendant's plea of guilty to Count One of the Indictment and adjudge her guilty of that offense. The undersigned further DIRECTS that a presentence report be prepared and RECOMMENDS that the presiding District Judge defer acceptance of the plea agreement until after that report has been submitted to the Court. A sentencing hearing hereby is scheduled for July 21, 2005 at 2:00 p.m. before the presiding District Judge in Harrisonburg.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is

directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

5/13/05
Date